# Richmond

## Janitors Political Club, Inc., et als. v. Joseph Simmons, et als.

November 20, 1944.

Record No. 2853.

Present, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Meyer Koteen* and *Tazewell Taylor*, for the appellants.

*William G. Maupin* and *R. H. Hopkins*, for the appellees.

BROWNING, J., delivered the opinion of the court.

The appellees, under section 3804 of the Code of Virginia, filed a petition addressed to the judge of the Corporation Court of the city of Norfolk, Virginia, to hear and determine the matters set forth therein and to accord to them the relief prayed for. It is alleged that a notice was attached to the petition acquainting the defendants, appellants, with the purposes thereof, and that the application would be made at 10 o'clock A. M. on the 30th day of September, 1943, to hear and determine the matters set forth.

The Janitors Political Club, Inc., one of the appellants, and also one of the defendants to the petition, is a corporation, existing under the laws of Virginia, with its principal office in the city of Norfolk. The charter was granted by the State Corporation Commission on the 5th day of February, 1942.

The officers named were: Joseph Simmons, President; Gladiola Crocker, Secretary; Thomas Neal, Treasurer. Directors: Joseph Simmons, Oliver Langston, John Gilliam, and J. E. Thornton.

Of these, four were petitioners praying the court for relief; three, Oliver Langston, Elsie Whitehurst and J. E. Thornton, presented the certificate for incorporation to the commission. The record discloses that fourteen colored persons were initially actively interested in effecting the corporation.

Soon after the certificate of incorporation was granted a meeting was held and the following officers and directors were elected by the fourteen persons who constituted the appellees and the personal appellants: Joseph Simmons, President; Elsie Whitehurst, Vice-President; Gladiola Crocker, Secretary; Thomas Neal, Treasurer. Directors: Joseph Simmons, Oliver Thompson, and Thomas Neal.

It will thus be noticed that certain changes were made in the official personnel.

The by-laws, presently to be specifically mentioned, provided for annual meetings, on the first Thursday of each

year, for the purpose of electing officers and directors, and a regular meeting of the members of the club on the first Thursday of each month. At the first regular annual meeting, the same officers and directors were continued in office for one year. At this meeting those present and voting were confined to the fourteen persons already referred to.

Some unpleasantness of feeling seems to have crept into this corporate family, engendered, probably, by official ambition, which resulted in two factions, one composed of nine persons, numerically dominant, and the other of five persons, vocally so. This becomes apparent from the fact that on May 6, 1943, at a regular monthly meeting, at which nearly all of the fourteen persons referred to were present, another set of officers were chosen who turned out to be the five appellants, who were the defendants to the petition. They composed the recalcitrant minority.

It was said that this change in the official organization was accomplished by the statement of James E. Thornton that the officials of the Alcoholic Beverage Control Board had told him that it had become necessary to change the officers of the Club. This was denied, but it appears that the members became alarmed and were thrown into a state of panic because, forsooth, the license of the club to sell beer had to issue from the Alcoholic Beverage Control Board. It will be observed that in the new official family there were two Thorntons, James E., and James A., father and son, one the president, the other the secretary, and both members of the board of directors, the others were of their adherents. This, as we have seen, was allegedly brought about by the reputed false report declared and circulated by James E. Thornton. The burden of the petition is that they are usurpers of authority, made possible by their own sinister actions. The facts, as the petitioners saw them and alleged them, are made the basis for the relief prayed for, which is the ouster of the present officers and the restoration of those who were legally clothed with the ermine of official regularity.

Let us say that, as far as the record discloses, there has never been a formal and legal adoption of the by-laws; that therefore it becomes apparent that nothing bearing the impress of legality has been done since the certificate of incorporation issued. Whether it had continued existence *de jure* or *de facto* is a question as to which we hazard no opinion.

Thus the trial judge was confronted with a problem bearing as complete a potpourri of elements, some having a semblance of legality and some barren of it, as could have been conceived.

Pursuant to the statute, the trial judge called together the fourteen members, or stockholders, or whatnot, who had borne the heat and burden of the day by putting up the necessary funds to make the scheme a going concern, and holding a meeting for the election of officers and directors, and starting on a new and legal road to the goal originally planned.

Just a few additional thoughts and we are through.

It is difficult to determine what sort of a corporation it is. Both factions, in the pleadings, termed it a non-stock and non-profit corporation—a social or fraternal organization. As the case developed the fronts were somewhat changed, one faction adhering to the social and fraternal idea and the other urging the dominance of the commercial flavor of the scheme. It may be well to say that the certificate of incorporation, or of charter, fixed a capital stock with a minimum of 100 shares with the value of $1.00 each. This formed the basis of the contention of one faction, that those persons who joined the organization by the payment of a dollar and receiving a membership card, entitling them solely to the social privileges of the club, were entitled to vote at the regular annual meeting for the election of officers and directors.

The other faction urged that those persons who had furnished the funds necessary for the operation of the concern, should alone be entitled to vote, and on the basis of the

amounts they had contributed, to represent shares of the value of $1.00 each of the stock of the corporate structure.

The trial court adopted the latter theory.

Conceivably, the solution was about the best that could be reached. At least, it was the interpretation that the parties, themselves, had placed upon the matter, which is important.

It is also noteworthy that the court heard the witnesses upon evidence *ore tenus* and its decision is of high value. The decree is affirmed and the case is remanded to be further dealt with as the court may be advised.

*Affirmed.*

HUDGINS, J., concurring.

The Janitors Political Club, Inc., was chartered pursuant to the provisions of chapter 148 of the 1919 Code of Virginia as an ordinary business corporation for the purpose of operating a political, recreation and information club, to maintain club rooms and to buy and sell to its members food and beverages. The maximum and minimum amounts of capital stock authorized were $1,000 and $100, respectively, divided into shares of $1.00 each. However, no certificates of stock were actually issued. An elaborate set of by-laws was prepared but was never formally adopted, though the interested parties seem to have regarded the by-laws as part of the rules and regulations under which the corporate business was conducted. Eleven persons contributed to the treasury of the corporation $67 each, two contributed $77 each and one contributed $55.

The corporate business was conducted without friction by the fourteen persons who had contributed the above stated sums until the regular monthly meeting held on May 6, 1943. At this meeting James E. Thornton falsely represented that the officials of the Alcoholic Beverage Control Board had told him that unless there was a change in the officers of the corporation the license to dispense beer on the premises would be withdrawn. Thereupon all officers and the board

of directors resigned. James E. Thornton was elected president; John Gilliam, vice-president; James A. Thornton, secretary; and William Askew, treasurer. Two other members were elected to the board of directors.

Later, nine of the fourteen original organizers ascertained that Thornton had secured the resignation of the officers and the board of directors on misrepresentation of facts. Thereupon a called meeting of the fourteen members was held and a new board of directors and new officers were elected. The officers elected in May, 1943, refused to surrender their offices and to turn over the property and management of the corporation to the newly elected board of directors.

The newly elected officers and the new board of directors filed a petition under the provisions of section 3804 of the 1919 Code and prayed that the trial court determine who was entitled to conduct the affairs of the corporation.

Answers were filed to the petition, in which it was alleged that memberships in the club had been sold to 100 or more individuals and that such members were entitled to vote in the election of a board of directors.

The trial court held that the only persons entitled to vote in the corporate affairs were the fourteen members who had contributed the stated sums to the treasury of the corporation. The election of a new board of directors and new officers was conducted under the supervision of the trial judge. At this election the board of directors and the officers who had resigned on May 6, 1943, were re-elected, and the Thornton faction was directed to turn over the books and all corporate property to the board and officials elected under the supervision of the trial judge. From that order appellants secured this writ of error.

It is clear from a careful examination of the record that the trial court has correctly determined the controversies presented. It follows that the order of the trial court should be affirmed.

Eggleston, J., concurs in this opinion.